**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR-06-0299-HE |
| | ) | |
| GUY R. HYLTON, JR. and | ) | |
| CHICK ARTHUR LITTLE | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants Hylton and Little have moved to dismiss the indictment, arguing that the government's failure to preserve certain samples of debris taken for testing from the former Rock Island train depot in Elk City, Oklahoma, and a dump site near Highway 6 violates their rights under the Due Process clause of the Fifth Amendment. The government has responded. The court conducted a hearing on the motions on June 6, 2007, and now states its findings and conclusions.

Defendants' motions are directed to three sets of samples that were tested for the presence of asbestos. The first two sets of samples were taken at the depot site in May, 2003, by an inspector for the Oklahoma Department of Labor (Mr. Hilley), who was responding to a report of possible violations forwarded through the Occupational Safety and Health Administration, and later by a representative of the Oklahoma Department of Central Services (Mr. Gaylor).[1] The samples were provided to Quantem Laboratories for analysis.

---

[1]*The Oklahoma Department of Central Services performs asbestos removal for governmental units in Oklahoma and does so on a contract basis for local units of*

Quantem Laboratories concluded, as stated in its reports of May 2, 2003, and May 27, 2003, there were significant amounts of asbestos in both samples.

The third sample was taken at a dump site near Highway 6 in August, 2003. This sample was taken by a representative (Mr. Ingram) of the Oklahoma Department of Environmental Quality ("ODEQ"). He was there in the company of two other criminal investigators for ODEQ who were investigating a subsequent complaint of illegal disposal of asbestos. He took a sample from an object at the Highway 6 site which he thought might be asbestos and submitted the sample to Quantem for testing. As evidenced by its report of August 15, 2003, Quantem concluded the object tested was white plaster and that it did not contain asbestos.

All three sets of samples were destroyed or lost prior to the filing of this case and are no longer available. Defendants argue that their inability to inspect these samples or do further testing on them denies them a fair trial, as it prevents them from having or developing exculpatory evidence potentially important to their defenses.

In certain circumstances, the government's destruction or loss of evidence may violate a defendant's Due Process rights. The Supreme Court has recognized two general sets of circumstances potentially applicable here. In <u>California v. Trombetta</u>, 467 U.S. 479 (1984), the Court concluded a defendant's Due Process rights are violated where (1) the government

---

*government such as the City of Elk City. Mr. Gaylor was at the site to estimate the costs of removal and to work out the agreement for removal with the City. Thereafter, the Department completed the asbestos removal process for approximately $13,000.*

destroys evidence whose exculpatory significance is "apparent before" destruction, and (2) the defendant remains unable to "obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 489.  In Arizona v. Youngblood, 488 U.S. 51 (1988), the Court concluded that, in situations where the exculpatory value of the evidence is not "apparent before" destruction and all that can be confirmed is that the evidence was "potentially useful," a Due Process violation occurs only if the defendant can show that the government acted in bad faith in destroying the evidence.  Youngblood, 488 U.S. at 58; *see also* United States v. Bohl, 25 F.3d 904 (10th Cir. 1994).

     Insofar as the present motions are concerned, it is clear that the principles set out in Youngblood, rather than in Trombetta, govern their disposition.  With respect to the May, 2003, samples (which tested positive for the presence of asbestos), there was nothing "apparently" exculpatory about them.  Although it may be true, as defendant's argue, that further testing on the samples might have yielded exculpatory information, that possibility was not apparent at the time and is speculative at this point.  Such indeterminate information is only "potentially useful" and Youngblood therefore states the applicable test for a Due Process violation.  With respect to the August sample taken at the Highway 6 site, there is nothing remotely close to a Due Process violation as to it.  Quantem Laboratories' report confirmed the absence of asbestos in that sample (and concluded the sample was plaster). Thus the Quantem report is itself exculpatory. Further examination of the underlying sample is completely unnecessary to prove the absence of asbestos in it.  Defendant's have offered no plausible reason as to how their inability to inspect what was apparently white plaster

prejudices them in any way. As a result, the only real question is whether the destruction of the May samples makes out a violation under Youngblood.

In applying Youngblood to the present circumstances, the question is whether defendants can establish bad faith on the part of the government in destroying, or permitting the destruction of, the samples taken in May. Mere negligence on the part of the government in permitting the destruction of the evidence does not, by itself, constitute bad faith. Bohl, 25 F.3d at 912. The bad faith determination "must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Youngblood, 488 U.S. at 57.

Here, there was nothing to suggest that the government knew, or should have known, in May, 2003, that the samples had potential exculpatory value for defendants in a criminal proceeding or that its failure to preserve the samples was otherwise in bad faith. The investigations then in progress were essentially regulatory in nature. Although the Oklahoma Department of Labor and the ODEQ can make referrals to the appropriate authorities for criminal violations arising within their respective jurisdictions, there is no evidence that the involved departmental representatives had any such thought in mind in May, 2003. The samples were taken in the context of these agencies' normal efforts to enforce the applicable asbestos abatement regulations.[2]

---

[2]*The evidence established that, by August 2003, the tenor of the investigation had changed. Criminal investigators accompanied Mr. Ingram (ODEQ) to the meeting with defendants and others in Elk City.*

The evidence also established that Quantem Laboratories had an established procedure for the destruction or return of samples after thirty days, if there was no request for their retention in connection with a legal case. No such request was made here and there was no indication the destruction of these samples was anything other than the routine destruction by the laboratory (or someone else at their direction) after routine testing was done. The destruction of evidence as a part an agencies' normal procedures, at least where adequate documentation of the destroyed evidence is retained, does not indicate bad faith. Bohl, 25 F.3d at 912-3.

Unlike in Bohl, where the defendant made repeated and timely requests for access to the evidence before its destruction, any requests by the defendants for the samples came long after they had been destroyed.

In short, defendants have produced no evidence to suggest the loss or destruction of the May samples were under circumstances suggesting bad faith on the part of the government, within the meaning of Youngblood. They have offered no plausible reason for how their inability to examine the August sample prejudices them in any way. Accordingly, the motions to dismiss the indictment [Doc. Nos. 31 and 32] are **DENIED**.

**IT IS SO ORDERED**.

Dated this 7th day of June, 2007.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE